**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BTL INDUSTRIES, INC., | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| EMSZERO BEAUTY INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

Plaintiff BTL Industries, Inc. ("Plaintiff" or "BTL"), by and through the undersigned counsel, files this Complaint for patent infringement, trademark infringement, and unfair competition against Defendant EMSZERO BEAUTY INC. ("Defendant" or "EMSZERO") and alleges as follows:

## PARTIES

1.      BTL is a Delaware corporation with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

2.      On information and belief, Defendant is a Delaware corporation with a principal place of business at 16192 Coastal Highway, Lewes, Delaware 19958.

3.      On information and belief, Defendant has a Registered Agent listed as Harvard Business Services, Inc. also located at 16192 Coastal Highway, Lewes, Delaware, 19958.

4.      On information and belief, Defendant operates a warehouse located at 9560 Buffalo Avenue, Suite 100, Rancho Cucamonga, California 91730.

## JURISDICTION AND VENUE

1

5.      Subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051 and 1121 exists pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)-(b).

6.      Subject-matter jurisdiction for the trademark and unfair competition asserted in this complaint exists pursuant to 28 U.S.C. §§ 1331 and 1338.

7.      This Court has supplemental jurisdiction over BTL's claims arising under the laws of Delaware, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal-law claims insofar as they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.      This Court has personal jurisdiction over Defendant because it or its employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b) or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

9.      This Court has personal jurisdiction over Defendant because it is a Delaware corporation and has a principal place of business in this District.

10.     Further, the acts complained of herein occurred in this District.

11.     Similarly, the exercise of personal jurisdiction over Defendant comports with the due process requirements of the United States Constitution because:

    a.      Defendant has purposely established "minimum contacts" with the State of Delaware and this District; and

    b.      the exercise of personal jurisdiction over Defendant will not offend the traditional notions of fair play and substantial justice.

12.     Therefore, this Court has specific and general jurisdiction over Defendant.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and 1400(b) at least because Defendant has its principal place of business in this District and the acts complained of herein occurred in this District.

## BACKGROUND

14.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity, electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

15.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared aesthetic body-contouring device. *See* **Exhibit 1**, attached hereto (BTL Webpage Printout).

16.     BTL EMSCULPT® device created a new market in which it quicky became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

17.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." *See* **Exhibit 2**, attached hereto (BTL 2019 Press Release).

18.     BTL's EMSCULPT NEO® device is FDA-cleared and uses high-intensity electromagnetic energy to induce powerful muscle contractions—unachievable through typical voluntary contractions—to contour an individual's physique. The EMSCULPT NEO® device is currently cleared by the FDA as a non-invasive treatment for the abdomen, buttocks, arms, calves, and thighs. BTL markets and distributes its EMSCULPT NEO® device to healthcare professionals and licenses these professionals to provide treatment services using the device.

19.     The EMSCULPT NEO® device has been a breakthrough development in the aesthetics industry, receiving plaudits from some of the industry's largest companies. For example, the EMSCULPT NEO® device won Dermascope.com's Aesthetician's Choice Award in 2022 and Glamour magazine described the device as "revolutionary." *See* **Exhibit 3**, attached hereto (Dermascope and Glamour Awards).

20.     In September 2022, BTL released the EMFACE device (shown below), a standalone, non-invasive, aesthetic facial-contouring device. *See* **Exhibit 8** (BTL EMFACE Press Release). BTL's patent-protected EMFACE device applies a combination of synchronized radiofrequency and high-intensity facial electromagnetic stimulation (HIFES™). Synchronized radiofrequency heats the dermis to stimulate collagen and elastin production, while HIFES™ selectively contracts facial muscles. BTL has developed specifically configured EMFACE flexible applicators, tailoring each type of applicator to a specific target area.



21.     The EMFACE device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create heat and repetitive muscle contractions that result in a non-invasive method of toning muscle and face sculpting. https://bodybybtl.com/solutions/emface/.

22.     In March 2022, BTL received clearance from the FDA for its EMFACE device and began to sell the device in the United States for the improvement of facial toning and the reduction of wrinkles. *See* https://bodybybtl.com/solutions/emface/.

23.     BTL's EMFACE device won Cosmopolitan's Holy Grail Beauty Award for Best Treatment Game Changer in 2023. *See* **Exhibit 9** (Cosmopolitan Award).

24.     BTL markets and distributes its non-invasive aesthetic facial-contouring EMFACE device to healthcare professionals, and BTL licenses these healthcare professionals to provide the

associated treatment services administered via EMFACE devices that incorporates its proprietary technology, muscle toning protocols, and flexible applicators in the United States.

### A.    The Asserted Patents

25.    On November 19, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 patent"), entitled "Aesthetic Method and Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 patent is attached to this Complaint as **Exhibit 4**. The '634 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringement of the '634 patent, including equitable relief and damages.

26.    On June 20, 2023, the United States Patent and Trademark Office (USPTO) duly and lawfully issued U.S. patent No. 11,679,255 (the "'255 patent"), entitled "Device and method for unattended treatment of a patient." A true and correct copy of the '255 patent is attached to this Complaint as Exhibit 5. The '255 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringement of the '255 patent, including equitable relief and damages.

### B.    BTL's Trademarks

27.    BTL uses and licenses (for the sole purpose of advertising the equipment and related services) registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States, including the following federally registered trademarks for EMSCULPT®, EMSCULPT NEO®, EM®, and HIFEM® (collectively, the "BTL Trademarks"):

6

a.      Registration No. 5,572,801 for EMSCULPT in Class 010 for, among other goods, "medical apparatus and instruments for body toning and body shaping" and "medical apparatus and instruments for the removal of fat;"

b.      Registration No. 6,069,279 for EMSCULPT in Class 044 for, among other services, "medical services;"

c.      Registration No. 6,373,947 for EMSCULPT NEO in Class 010 for, among other goods, "medical apparatus and instruments for body toning and body shaping" and "medical apparatus and instruments for the removal of fat" and in Class 044 for, among other services, "medical services;"

d.      Registration No. 5,915,636 for EM in Class 044 for, among other services, "medical services;"

e.      Registration No. 6,206,098 for EM in Class 044 for, among other services, "medical services;" and

f.      Registration No. 5,688,619 for HIFEM in Class 010 for, among other goods, "medical and aesthetic apparatus and instruments," and in Class 044 for, among other services, "health care services."

28.    BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct status copies of the registration certificates for each of the above trademarks, obtained from the USPTO, are attached to this Complaint as **Exhibit 6**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

29.     The BTL Trademarks, therefore, perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT®, EMSCULPT NEO® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

## NATURE OF THIS ACTION

30.     This is a civil action brought by BTL arising out of Defendant's past and present patent infringement in violation of the patent laws of the United States, past and present trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and common law trademark infringement and unfair competition.

31.     On information and belief, Defendant manufacturers, offers for sale, and/or sells products that infringe the '634 patent, including without limitation the nineteen (19) devices identified in the following table (the "First Accused Devices"):

| # | Device Name | Landing Page | SKU Identifier | Device Image |
|---|---|---|---|---|
| 1 | EMSZERO Body Sculpting Machine Professional | https://www.emszerobeauty.com/emszero-body-sculpting-machine/ | EMS2477423 |  |
| 2 | EMSzero Body Sculpting Pro | https://www.emszerobeauty.com/emszero-body-sculpting-pro/ | EMS2607323 |  |

| 3 | EMSzero Body Sculpting Ultra | https://www.emszerobeauty.com/emszero-body-sculpting-ultra/ | EMS2615223 |  |
|---|---|---|---|---|
| 4 | EMSZERO Neo Personal Sculpting Pro | https://www.emszerobeauty.com/emszero-neo-personal-sculpting-pro/ | N/A |  |

| 5 | EMSzero Neo Plus Body Sculpt Machine | https://www.emszerobeauty.com/emszero-neo-plus-body-sculpt-machine/ | N/A |  |
| 6 | EMSZERO Neo Sculpting Machine 2nd Gen | https://www.emszerobeauty.com/emszero-neo-sculpting-machine-2nd-gen/ | EM2489123311 |  |
| 7 | EMSzero Personal Body Sculpting Lite | https://www.emszerobeauty.com/emszero-personal-body-sculpting-lite/ | EMS2594023 |  |

| 8 | EMSZERO Personal Neo Sculpting Machine | https://www.emszerobeauty.com/personal-emszero-neo-sculpting-machine/ | EMS2334523 |  |
|---|---|---|---|---|
| 9 | EMSZERO Portable Neo Body Contouring Machine | https://www.emszerobeauty.com/portable-neo-body-contouring-machine/ | EMS2336223 |  |
| 10 | EMSZERO PowerFlex HI-EMT Muscle Stimulator | https://www.emszerobeauty.com/muscle-stimulator-roller/ | EMS2476423 |  |

| 11 | EMSZERO Professional Body Sculpting Machine | https://www.emszerobeauty.com/emszero-professional-body-sculpting-machine/ | 1ZEWW2R9SSQ1 |  |
|----|----|----|----|----|
| 12 | EMSZERO UltraTone Muscle Conditioning Machine | https://www.emszerobeauty.com/6-in-1-emszero-muscle-roller/ | EMS2473723 |  |

| 13 | Gemstone Ice Cryo + EMSzero Body Sculpting Machine | https://www.emszerobeauty.com/gemstone-ice-cryo-emszero-body-sculpting-machine/ | N/A |  |
| 14 | High-Intensity Muscle Stimulator | https://www.emszerobeauty.com/emszero-high-intensity-muscle-stimulator/ | EMS2537323 |  |
| 15 | Home Use Neo Sculpting Machine | https://www.emszerobeauty.com/home-use-neo-sculpting-machine/ | N/A |  |

| 16 | Personal Neo Sculpting Machine Pro | https://www.emszerobeauty.com/reduce-cellulite-sculpt-stimulator/ | EMS2569023 |  |
| 17 | Professional EMSzero Neo Body Sculpt Machine 5 in 1 | https://www.emszerobeauty.com/professional-emszero-neo-body-sculpt-machine-5-in-1/ | N/A |  |

| 18 | Professional EMSzero NEO Body Sculpting Machine 5 in 1 | https://www.emszerobeauty.com/professional-emszero-neo-body-sculpting-machine-5-in-1/ | N/A |  |
|---|---|---|---|---|
| 19 | Professional Sculpting Machine 5 in 1 | https://www.emszerobeauty.com/professional-sculpting-machine-5-in-1/ | FWIWJW39NUFL |  |

32.     On information and belief, Defendant manufacturers, offers for sale, and/or sells products that infringe the '255 patent, including without limitation the five (5) devices identified in the following table (the "Second Accused Devices"):

| # | Device Name | Landing Page | SKU Identifier | Device Image |
|---|---|---|---|---|
| 1 | EMSzero Facial Therapy Machine | https://www.emszerobeauty.com/emszero-facial-therapy-machine/ | N/A |  |
| 2 | EMSzero Facial Therapy Machine Portable | https://www.emszerobeauty.com/emszero-facial-therapy-machine-portable/ | N/A |  |

17

| 3 | Facial Therapy Master | https://www.emszerobeauty.com/facial-therapy-master/ | N/A |  |
| 4 | LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine | https://www.emszerobeauty.com/lmrf-face-rf-tightening-lift-ems-facial-electromagnetic-stimulation-machine/ | N/A |  |

| 5 | Portable Facial Therapy Master | https://www.emszerobeauty.com/portable-facial-therapy-master/ | N/A |  |

33.     The First Accused Devices and Second Accused Devices may be referred to herein collectively as the "Accused Devices."

34.     Defendant promotes the Accused Devices on its website and social media accounts using terms identical to the BTL Trademarks, including without limitation "HIFEM," and terms confusingly similar to the BTL Trademarks, including without limitation "EMSZERO," "EMSZERO NEO," "HI-EMT," "HIFESTM," "HIMET," and "HIMMT."

35.     On information and belief, Defendant's activities are ongoing despite attorneys for BTL informing Defendant that its activities violate BTL's rights. On November 22, 2023, attorneys for BTL sent via email and FedEx a demand letter alerting Defendant to its infringing conduct and BTL's intellectual property rights. Defendant has not responded, and, on information and belief, Defendant's infringing conduct has continued. *See* **Exhibit 7**, attached hereto (Letter).

36.     The images below are representative of Defendant's infringing conduct:





- **HIFESTM Technology**: Targeting facial muscles, this advanced tech revitalizes and strengthens, enhancing muscle density and structure. Experience a selective muscle contraction process that offers superior lift and support for facial tissues.

The Professional Sculpting Machine 5 in 1 utilizes the potent combination of advanced HIMMT (High-Intensity Magnetic Muscle Training) technology and Radio Frequency (RF) to effectively build muscle and burn fat simultaneously. Achieve the equivalent of a staggering 14,000 muscle exercises in a single 30-minute session, signifying an efficient and powerful treatment.



37.     On information and belief, the First Accused Devices implement the same or substantively the same technology as the '634 patent.

38.     On information and belief, the Second Accused Devices implement the same or substantively the same technology as the '255 patent.

39.     Defendant's use of "HIFEM," "EMSZERO," "EMSZERO NEO," "HI-EMT," "HIFESTM," "HIMET," and "HIMMT" is without BTL's authorization.

22

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

40.     BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

41.     The '634 patent is directed toward a method for toning muscles in a patient using time-varying, magnetic fields. Claim 1 of the patent recites:

> A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

> placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

> coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the applicator to the patient's skin or clothing;

> providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

> applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region.

> wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

42.     Defendant has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent by making, using, offering to sell, selling, or importing the First Accused Devices in the United States and by encouraging, promoting, and instructing customers to use at least the First Accused Devices in manner that directly infringes at least claim 1 of the '634 patent.

23

43.     Defendant has and continues to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '634 patent, which recited "[a] method for toning muscles in a patient using time-varying magnetic fields."

44.     The manuals and landing pages for the First Accused Devices encourage, promote, or instruct customers to use the First Accused Devices in a manner that tones a patient's muscles using time-varying magnetic fields.

45.     The landing page for the EMSZERO Body Sculpting Machine Professional states, "Our cutting-edge technology uses a high-intensity Tesla coil to generate a strong magnetic field...." "...helping you achieve a more defined and sculpted physique."

46.     The landing page for the EMSZERO Body Sculpting Machine Professional also states, "This state-of-the-art device stimulates the abdominal muscles, promoting muscle contractions and toning effects similar to those attained through rigorous exercise."

47.     The User Manual for the EMSZERO Body Sculpting Machine Professional represents that the device has a frequency range of "5–100 Hz" which indicates that the magnetic field is time varying.

48.     The landing page for the EMSzero Body Sculpting Pro represents that the device "generate[s] a strong magnetic field" and is used to "achiev[e] a toned and chiseled midsection." and is used to "shape and tone our core."

49.     On information and belief, the magnetic fields produced by the First Accused Devices are time-varying.

50.     The landing page for the EMSzero Body Sculpting Ultra represents that a main feature of the device is "[m]uscle [t]oning[,]" and that the device uses "focused electromagnetic energy."

51.     The landing page for the EMSZERO Neo Personal Sculpting Pro represents that the device is used for body sculpting.

52.     On information and belief, that representation includes muscle toning, and the EMSZERO Neo Personal Sculpting Pro, like other EMSzero devices, uses time-varying magnetic fields to do so.

53.     The landing page for the EMSzero Neo Plus Body Sculpt Machine advertises the machine's "[h]igh magnetic flux density[,]" "synchronized magnetic ... waves[,]" "[f]ast frequency up to 300Hz[,]" and ability to "build and shape your muscles"

54.     On information and belief, those statements indicate that the EMSzero Neo Plus Body Sculpt Machine utilizes time-varying magnetic fields to tone muscles in a patient.

55.     The landing page for the EMSZERO Neo Sculpting Machine 2nd Gen represents that the device uses "electromagnetic therapy" facilitates "body enhancement, ... muscle growth, fat reduction, and precise body contouring."

56.     On information and belief, those stated actions constitute muscle toning.

57.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO Neo Sculpting Machine 2nd Gen produces time-varying electromagnetic waves.

58.     The landing page for the EMSzero Personal Body Sculpting Lite Machine represents that the device uses "[e]lectromagnetic [w]ave technology" to "ensur[e] muscle growth, density, and fat reduction simultaneously."

59.     On information and belief, muscle growth, density, and fat reduction constitute muscle toning, and a reasonable opportunity for further investigation or discovery will show that EMSzero Personal Body Sculpting Lite Machine produces magnetic fields are time-varying.

60.     The landing page for the EMSZERO Personal Neo Sculpting Machine represents that the machine is used for "body enhancement, ... muscle augmentation, fat reduction, and ... body contouring."

61.     On information and belief, these actions constitute muscle toning.

62.     Furthermore, the landing page for the EMSZERO Personal Neo Sculpting Machine represents that the device uses "electromagnetic therapy."

63.     Images on the landing page for the EMSZERO Personal Neo Sculpting Machine represent that the device produces at least three different phases of electromagnetic waves, each of which are time varying.

64.     The landing page for the EMSZERO Portable Neo Body Contouring Machine represents that the device has a frequency of 1-100 Hz and builds muscle.

65.     On information and belief, that representation constitutes muscle toning.

66.     The user manual for the EMSZERO Portable Neo Body Contouring Machine represents that the device uses electromagnetism.

67.     The landing page for the EMSZERO PowerFlex HI-EMT Muscle Stimulator represents that the device uses electromagnetic waves to increase muscle density and volume and reshape muscle.

68.     On information and belief, those actions result in more toned muscles.

69.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO PowerFlex HI-EMT Muscle Stimulator produces electromagnetic waves that are time-varying.

70.     The landing page for the EMSZERO Professional Body Sculpting Machine represents that the device tones abs, arms, legs, and other body areas using high-intensity magnetic wave technology.

71.     The brochure for the EMSZERO Professional Body Sculpting Machine represents that the device has a frequency range of 5–150 Hz which indicates time-variance.

72.     The landing page for the EMSZERO UltraTone Muscle Conditioning Machine represents that the device uses electromagnetic waves to tone muscle.

73.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO UltraTone Muscle Conditioning Machine produces electromagnetic waves that are time varying.

74.     The landing page for the Gemstone Ice Cryo + EMSzero Body Sculpting Machine represents that the device uses fast frequency (up to 200 Hz) electromagnetic waves to tone the body.

75.     On information and belief, the Gemstone Ice Cryo + EMSzero Body Sculpting Machine produces electromagnetic waves that are time-varying.

76.     The landing page for the High-Intensity Muscle Stimulator represents that the device uses electromagnetic wave technology to enlarge muscles and enhance their density and volume.

77.     On information and belief, the High-Intensity Muscle Stimulator produces electromagnetic waves that are time-varying.

78.     For example, the landing page for the High-Intensity Muscle Stimulator represents that the device operates up to 200 Hz, which indicates that the treatment varies.

27

79.     The landing page for the Home Use Neo Sculpting Machine represents that the device uses high intensity magnetic waves to remodel muscles, enhance muscle density and volume, and strengthen and increase muscle.

80.     On information and belief, a reasonable opportunity for further investigation and discovery will show that the Home Use Neo Sculpting Machine produces high intensity magnetic waves that are time varying.

81.     For example, the landing page for the Home Use Neo Sculpting Machine represents that the device uses "[e]lectrical [m]uscle [s]timulation" and "high intensity magnetic waves."

82.     On information and belief, these magnetic waves are time-varying.

83.     The landing page for the Personal Neo Sculpting Machine Pro represents that the device uses high energy focused electromagnetic wave technology to "remodel" and "grow[] muscles" and "enhance[] muscle density and volume."

84.     On information and belief, these representations constitute muscle toning.

85.     On information and belief, the magnetic waves that are produced are time varying.

86.      The landing page for the Professional EMSzero Neo Body Sculpt Machine 5 in 1 represents that the device utilizes magnetic waves to tone the body and that the device has a frequency up to 200 Hz which indicates that the magnetic waves vary with time.

87.     The landing page for the Professional EMSzero NEO Body Sculpting Machine 5 in 1 states this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

88.     The instruction manual for the Professional Sculpting Machine 5 in 1 represents that the device uses electromagnetic waves to increase muscle density and volume and has a frequency of 5–100 Hz which indicates that the magnetic field is time-varying.

28

89.     Defendant has and continues to encourage, promote, and instruct customers to perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock."

90.     On information and belief, the First Accused Devices include at least one applicator comprising a magnetic field generating coil.

91.     The manuals and landing pages for the First Accused Devices depict or describe the applicators as positioned on various body regions including the abdomen or buttock.

92.     The landing page and user manual for the EMSZERO Body Sculpting Machine Professional represents that the device has handles which, on information and belief, contain the magnetic field generating coil it is represented to have, and describe the use of the machine on a patient's abdomen.

93.     The landing page for the EMSzero Body Sculpting Pro instructs users to "[p]lace the provided electrodes on your skin, ensuring they have good contact with the target muscle area." On information and belief, the "electrodes" are the device's handles/applicators. The landing page also represents that the device can be used on the abdomen.

94.     On information and belief, the handles for the EMSzero Body Sculpting Ultra house magnetic field generating coils and are placed in contact with the area of a patient's skin or clothing where treatment is desired.

95.     For example, the landing page for this device represents that the treatment areas include at least the buttocks.

96.     The handles of the EMSZERO Neo Personal Sculpting Pro, on information and belief, are used in the same manner as the handles of the other First Accused Devices.

97.     For example, the landing page for the EMSZERO Neo Personal Sculpting Pro represents that the handles are attached, presumably to a patient and that the arms, waist, buttocks, and legs are treatment areas.

98.     On information and belief, the handles for the EMSzero Neo Plus Body Sculpt Machine contain magnetic field generating coils that create the magnetic waves described in paragraph 53.

99.     Further on information and belief, these handles are placed in contact with treatment areas on a patient, wherein those areas include at least the abdomen and buttocks.

100.    For example, the landing page for this device represents that "[t]he handle delivers the energy up to 8cm deep into muscle tissue for deeply targeted and effective body shaping."

101.    The landing page for the EMSZERO Neo Sculpting Machine 2nd Gen instructs users to "attach the handles" to the treatment area.

102.    On information and belief, the treatment area includes the abdomen and/or buttocks.

103.    On information and belief, a reasonable opportunity for further investigation will show that in order to use the EMSzero Personal Body Sculpting Lite Machine, the applicators must be placed in contact with a patient's skin or clothing.

104.    Furthermore, the landing page for the device represents that it "defines abdominal vest lines" and "accentuat[es] peach hips."

105.    The landing page for the EMSzero Personal Body Sculpting Lite Machine represents that the device comes with "dual treatment handles," and images in the "Reviews" page shows the handles attached to patients' abdomens and buttocks.

30

106.    On information and belief, the EMSZERO Portable Neo Body Contouring Machine's handles contain the magnetic field generating coils which are the source of the device's electromagnetic properties.

107.    The user manual for the EMSZERO Portable Neo Body Contouring Machine instructs the operator to "[u]se the belt to fix the handle to the body part being treated" and represents that the treatment areas include the abdomen and buttocks.

108.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO PowerFlex HI-EMT Muscle Stimulator's EMS Handles contain magnetic-field generating coils and that in order to use these handles, they must be in contact with the patient's skin or clothing.

109.    The landing page for this device represents that the device's handles are specifically designed for use on the abdomen.

110.    The user manual for the EMSZERO Professional Body Sculpting Machine instructs the user to fix the handle to the body part being treated, and the brochure depicts images of patients' abdomens before and after treatment.

111.    The user manual for the EMSZERO Professional Body Sculpting Machine also depicts an image of the handle emitting waves which, on information and belief, are electromagnetically generated from within the handle.

112.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO UltraTone Muscle Conditioning Machine's handles contain magnetic field generating coils and are put in contact with a patient's skin or clothing to begin treatment.

113.    For example, the device's handles are specially called "Abdomen Handle pieces" and resemble the handles of other devices that include magnetic field generating coils and are held to a patient's skin or clothing to begin treatment.

114.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the handles of the Gemstone Ice Cryo + EMSzero Body Sculpting Machine contain magnetic field generating coils and are placed on a patient's skin or clothing on the abdomen or buttocks to begin treatment.

115.    For example, the handles of this device resemble handles from other First Accused Devices, and, therefore, it is reasonable to assume that they operate in largely the same manner.

116.    The landing page for the High-Intensity Muscle Stimulator represents that the device utilizes a double layer coil to generate electromagnetic waves.

117.    On information and belief, this coil is located in the device's handles.

118.    The landing page for this device also represents that the handles should be attached and have good contact with the target muscle area which includes the abdomen.

119.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the handles of the Home Use Neo Sculpting Machine contain magnetic field generating coils and are placed on a patient's skin or clothing on the abdomen.

120.    For example, a question posed in the "Q&A" section of the landing page asks whether the device can treat areas other than just the abdomen.

121.    Furthermore, the handles of this device resemble handles of other First Accused Devices which are attached to patient's abdomens and buttocks and contain magnetic field generating coils.

122.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the handles of the Personal Neo Sculpting Machine Pro contain magnetic field generating coils.

123.     For example, the landing page represents that the device utilizes electromagnetic waves and instructs the user to attach the handles to the patient and ensure they have good contact with the abdomen.

124.     On information and belief, a reasonable opportunity for further investigation will show the applicators of the Professional EMSzero Neo Body Sculpt Machine 5 in 1 house magnetic field generating coils.

125.     For example, the landing page instructs the user to strap the handles to the body to begin treatment.

126.     Therefore, it is reasonable to believe that the magnetic fields emanate from the handles of the Professional EMSzero Neo Body Sculpt Machine 5 in 1 which house the magnetic field generating coils.

127.     Based on the relative shape and similarities of the handles to other handles of the First Accused Devices, it is reasonable to assume that the device is intended to treat both the abdomen and the buttocks.

128.     The landing page for the Professional EMSzero NEO Body Sculpting Machine 5 in 1 states this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

129.     On information and belief, a reasonable opportunity for further investigation will show the handles of the Professional Sculpting Machine 5 in 1 house magnetic field generating coils.

130.    For example, the instruction manual instructs the user to fix the handle using the belt to the patient.

131.    Therefore, it is reasonable to believe that the magnetic fields emanate from the handles which in turn house magnetic field generating coils.

132.    The instruction manual also recommends selecting the abdomen as the body part to be treated.

133.    Defendant has and continues to encourage, promote, and instruct customers to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing."

134.    The manuals, brochure, and landing pages for the First Accused Devices represent that the devices come with elastic and length adjustable belts that fasten the applicator to a patient's body region.

135.    The user manual for the EMSZERO Body Sculpting Machine Professional instructs users to "...remove the handle from its stand and secure it to the client's desired treatment area using the provided strap."

136.    On information and belief, the EMSzero Body Sculpting Pro has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

137.    For example, the applicators of the EMSzero Body Sculpting Pro are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

138.    On information and belief, the EMSzero Body Sculpting Ultra has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

139.    For example, the applicators of the EMSzero Body Sculpting Ultra are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

140.    On information and belief, the EMSZERO Neo Personal Sculpting Pro has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

141.    For example, the applicators of the EMSZERO Neo Personal Sculpting Pro are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

142.    On information and belief, the EMSZERO Neo Sculpting Machine 2nd Gen has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

143.    For example, the applicators of the EMSZERO Neo Sculpting Machine 2nd Gen are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

144.    On information and belief, the EMSzero Personal Body Sculpting Lite Machine has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

145.    For example, the applicators of the EMSzero Personal Body Sculpting Lite Machine are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

146.    On information and belief, the EMSZERO PowerFlex HI-EMT Muscle Stimulator has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

147.    For example, the applicators of the EMSZERO PowerFlex HI-EMT Muscle Stimulator are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

148.    On information and belief, the EMSZERO UltraTone Muscle Conditioning Machine has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

149.    For example, the applicators of the EMSZERO UltraTone Muscle Conditioning Machine are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

150.    On information and belief, the High-Intensity Muscle Stimulator has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

151.    For example, the applicators of the High-Intensity Muscle Stimulator are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

152.    On information and belief, the Home Use Neo Sculpting Machine has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

153.    For example, the applicators of the Home Use Neo Sculpting Machine are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

154.    On information and belief, the Personal Neo Sculpting Machine Pro has at least one adjustable flexible belt that holds the applicator to the patient's skin or clothing.

155.    For example, the applicators of the Personal Neo Sculpting Machine Pro are similar in appearance to the other First Accused Devices and other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

156.    On information and belief, the handles for the EMSzero Neo Plus Body Sculpt Machine are coupled to the patient using an adjustable flexible belt.

157.    For example, the landing page for this device represents that the device comes with 4 belt straps which coincides with the 4 handles.

158.    The landing page for the EMSzero Personal Body Sculpting Lite Machine has images in the "Reviews" page that show the applicators being held to patients with adjustable flexible belts.

159.    The user manual for the EMSZERO Portable Neo Body Contouring Machine instructs the user to "[u]se the belt to fix the handle to the body part being treated."

160.    The user manual for the EMSZERO Professional Body Sculpting Machine represents that the device comes with belts and instructs the user to use the belt to fix the handle to the body part being treated.

161.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the handles of the Gemstone Ice Cryo + EMSzero Body Sculpting Machine are secured to the patient using adjustable flexible belts.

162.    For example, the handles resemble handles of other First Accused Devices which are held to a patient using flexible adjustable belts.

163.    The landing page for the Professional EMSzero Neo Body Sculpt Machine 5 in 1 represents that the device comes with belt straps and instructs the user to strap the handles to the body.

164.    The landing page for the Professional EMSzero NEO Body Sculpting Machine 5 in 1 states this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

165.    The instruction manual for the Professional Sculpting Machine 5 in 1 instructs users to strap the handle to the patient using the included belt.

37

166.    The instruction manual and landing page for the Professional Sculpting Machine 5 in 1 also represent that the device comes with belt straps.

167.    Defendant has and continues to encourage, promote, and instruct customers to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field."

168.    On information and belief, the First Accused Devices include power supplies which transmit energy to the applicators, which in turn generates time-varying magnetic fields.

169.    The manuals, brochure, and landing pages for the First Accused Devices, for example, reference power supplies or power cords that connect to a power supply, which, on information and belief, supply power to the applicators so they may generate time-varying magnetic fields.

170.    The user manual and landing page for the EMSZERO Body Sculpting Machine Professional represents that the device has a power cord and "high-intensity Tesla coil to generate a strong magnetic field."

171.    The landing page for the EMSzero Body Sculpting Pro depicts in an image of the device that the device has a electrical supply outlet on the back and represents that the device uses "high-intensity Tesla coil to generate a strong magnetic field" that, on information and belief, is supplied with electricity via the electrical supply port.

172.    The landing page for the EMSzero Body Sculpting Ultra depicts in an image of the device that has an electrical supply outlet on the back and represents that the device uses electrical energy to stimulate muscles which, on information and belief, are time-varying magnetic fields.

173.    The landing page for the EMSZERO Neo Personal Sculpting Pro depicts an image of the device that has an electrical supply outlet on the back.

174.    The landing page for the EMSZERO Neo Personal Sculpting Pro also represents that the device employs the same body sculpting treatments as other machines but "without additional power consumption" which, on information and belief, is referring to the electromagnetic nature of the treatment.

175.    The landing page for the EMSzero Neo Plus Body Sculpt Machine represents that the device has a "[p]owerful voltage regulator makes energy very stable."

176.    On information and belief, this language indicates that electricity is provided to the electromagnetic field generating coil to produce the magnetic waves.

177.    For the reasons stated in paragraph 53, those magnetic waves are time-varying.

178.    The landing page for the EMSZERO Neo Sculpting Machine 2nd Gen Machine represents that the device has an output of "2500W" and utilizes electromagnetism.

179.    On information and belief, the handles of this device contain magnetic field generating coils that create magnetic waves using electricity.

180.    On information and belief, a reasonable opportunity for further investigation or discovery will show that electricity is provided to the magnetic field generating coils of the EMSZERO Neo Sculpting Machine 2nd Gen Machine to produce a time-varying magnetic field.

181.    The landing page for the EMSzero Personal Body Sculpting Lite Machine represents that the device uses electromagnetism and that the device has a power outlet.

182.    On information and belief, electricity is provided to the device to produce magnetic waves. On information and belief, a reasonable opportunity for further investigation will show that the handle of the device contains a magnetic-field generating coil.

183.    The landing page for the EMSzero Personal Body Sculpting Lite Machine represents that the device has a plug for electricity, has "2800W capacity," and produces electromagnetic waves.

184.    On information and belief, these are emitted from the handles containing magnetic field generating coils which require electricity.

185.    On information and belief, the EMSZERO Portable Neo Body Contouring Machine utilizes electromagnetic energy which produces magnetic waves.

186.    In order to generate these magnetic waves, electricity must be provided to the coil which, on information and belief, is located in the handle.

187.    On information and belief, the EMSZERO PowerFlex HI-EMT Muscle Stimulator utilizes electromagnetism to produce magnetic waves.

188.    On information and belief, the coils that produce these waves are located in the handles of the machine and electricity must be supplied to the coils in order for the magnetic waves to be generated.

189.    The user manual for the EMSZERO Professional Body Sculpting Machine provides treatment parameters and machine specifications that result in a method of operating this device by providing energy to the magnetic field generating coil to generate time-varying magnetic fields.

190.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO UltraTone Muscle Conditioning Machine provides electricity to its magnetic field generating handles to produce magnetic waves.

191.    For example, electricity must be provided to produce electromagnetic waves, which the landing page for this device represents the device does.

192.    On information and belief, a reasonable opportunity for further investigation will show that the handles of the Gemstone Ice Cryo + EMSzero Body Sculpting Machine house the magnetic field generating coils which generate the time-varying magnetic fields.

193.    On information and belief, these coils use electricity to produce the time-varying magnetic waves and require a power source to supply such electricity.

194.    The landing page for the High-Intensity Muscle Stimulator represents that the device uses electricity as its power type, and electromagnetic coils use electricity to produce magnetic waves.

195.    The landing page for the Home Use Neo Sculpting Machine represents that the device utilizes high intensity electromagnetic waves, has an input voltage of 110V/220V and a maximum power output of 2000W.

196.    On information and belief, this electricity is supplied to the magnetic field generating coil to facilitate the production of time-varying magnetic waves.

197.    The landing page for the Personal Neo Sculpting Machine Pro represents that the device uses electricity as its power type and has a voltage of 110V/220V.

198.    On information and belief, this electricity is used to generate magnetic waves using electromagnetic wave generating coils which are located in the treatment handle.

199.    For example, the treatment handles are placed on the patient, so it is reasonable to assume that the magnetic waves emanate and therefore are produced within the handles.

200.    On information and belief, a reasonable opportunity for further investigation will show that the device supplies the magnetic field generating coils in the handles with electricity to produce magnetic waves.

201.    For example, the magnetic waves are generated using an electromagnet; the device is powered by electricity of 110V/220V and has an output of 5000W.

202.    Therefore, it is reasonable to assume that this electricity is supplied to the electromagnet coil in the handles to produce magnetic waves.

203.    The landing page for the Professional EMSzero NEO Body Sculpting Machine 5 in 1 states that this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

204.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Professional Sculpting Machine 5 in 1 supplies electricity to the magnetic field generating coils located in the handles to produce time-varying magnetic fields.

205.    For example, the landing page and instruction manual reference power cords and indicate where on the machine it plugs into standard wall outlet.

206.    This electricity is then used to operate the machine and provide electricity to the electromagnetic coils which in turn produce electromagnetic waves.

207.    Defendant has and continues to encourage, promote, and instruct customers to perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region."

208.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the First Accused Devices generate and deliver magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

209.    For example, the landing page and user manual for the EMSZERO Body Sculpting Machine Professional represents that the device uses a "high-intensity Tesla coil."

210.     On information and belief, based on this statement and the relative size of the handle, the magnetic fluence is within the claimed range.

211.     The landing page for the EMSzero Body Sculpting Pro represents that the device uses a "high-intensity Tesla coil."

212.     On information and belief, based on this statement and the relative size of the handle, the magnetic fluence is within the claimed range.

213.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSzero Body Sculpting Ultra applies a magnetic fluence within the claimed range.

214.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO Neo Personal Sculpting Pro applies a magnetic fluence within the claimed range.

215.     The landing page for the EMSzero Neo Plus Body Sculpt Machine represents that the device has a "[h]igh magnetic flux density."

216.     On information and belief, based on this representation and the relative size of the handles, this device applies a magnetic fluence within the claimed range.

217.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO Neo Sculpting Machine 2nd Gen Machine applies a magnetic fluence within the claimed range.

218.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSzero Personal Body Sculpting Lite Machine applies a magnetic fluence within the claimed range.

219.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSzero Personal Body Sculpting Lite Machine applies a magnetic fluence within the claimed range.

220.    The user manual for the EMSZERO Portable Neo Body Contouring Machine represents that the device produces a maximum magnetic energy of 12 Tesla.

221.    Given this value and the relative size of the device's handles, it is reasonable to assume that the device produces a magnetic fluence within the claimed range.

222.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMSZERO PowerFlex HI-EMT Muscle Stimulator produces a magnetic fluence within the claimed range.

223.    The user manual for the EMSZERO Professional Body Sculpting Machine represents that the device operates up to a maximum magnetic energy of 13 Tesla.

224.    On information and belief, a reasonable opportunity for further investigation or discovery will show the area of the magnetic field generating device is sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

225.    On information and belief, a reasonable opportunity for investigation or discovery will show that the EMSZERO UltraTone Muscle Conditioning Machine produces a magnetic fluence within the claimed range.

226.    On information and belief, a reasonable opportunity for investigation or discovery will show that the Gemstone Ice Cryo + EMSzero Body Sculpting Machine produces a magnetic fluence within the claimed range.

227.    For example, the landing page represents that the device uses "high power 5000W" and based on the relative size of the treatment handles, it is reasonable to assume that the magnetic fluence would fall within this claimed range.

228.    The landing page for the High-Intensity Muscle Stimulator represents that the device produces up to 14 Tesla,

229.    Based on this value and the relative size of the applicators, it is reasonable to believe that the magnetic fluence falls within the claimed range.

230.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Home Use Neo Sculpting Machine produces a magnetic fluence within the claimed range.

231.    For example, the device's parameters are similar to other First Accused Devices that, on information and belief, produce magnetic fluence within the claimed range.

232.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Personal Neo Sculpting Machine Pro produces a magnetic fluence within the claimed range.

233.    For example, the landing page represents that the device has 14 Tesla high energy.

234.    Based on this and the relative size of the applicators, it is reasonable to assume that the magnetic fluence falls within the claimed range.

235.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Professional EMSzero Neo Body Sculpt Machine 5 in 1 produces magnetic fluence within the claimed range.

236.    For example, the landing page for the device represents that the device has an output of 5000W.

237. Based on this, the similarities to other devices, and the relative size of the applicators, it is reasonable to assume that the device's magnetic fluence falls within the claimed range.

238. The landing page Professional EMSzero NEO Body Sculpting Machine 5 in 1 states this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

239. The landing page for the Professional Sculpting Machine 5 in 1 represents that the device produces 120 Weber of magnetic flux density.

240. On information and belief, taking into account this amount and the relative size of the applicators, it is reasonable to assume that the device produces a magnetic fluence within the claimed range.

241. Defendant has and continues to encourage, promote, and instruct customers to perform the claimed "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region."

242. The manuals, brochure, and landing pages for the First Accused Devices promote and advertise the devices' abilities to generate magnetic fields sufficient to cause muscle contractions.

243. For the reasons stated in paragraphs 44–86, the First Accused Devices produce time-varying magnetic fields.

244. The landing page for the EMSZERO Body Sculpting Machine Professional represents that the device causes muscle contractions.

245. For example, the landing pages states the device "sends electric impulses to your muscles, causing them to contract and relax involuntarily."

46

246.    The landing page for the EMSzero Body Sculpting Pro represents that the device causes muscle contractions.

247.    For example, the landing pages states that the device "sends electric impulses to your muscles, causing them to contract and relax involuntarily."

248.    The landing page for the EMSzero Body Sculpting Ultra represents that the device causes muscle contractions.

249.    For example, the landing page states that the device "emit[s] electrical impulses, [] contract[ing] and relax[ing] your muscles."

250.    The landing page for the EMSZERO Neo Personal Sculpting Pro represents that the device causes muscle contractions.

251.    For example, the landing page states that the device "allow[s] for deep involuntary muscle contractions."

252.    The landing page for the EMSzero Neo Plus Body Sculpt Machine represents that the device causes muscle contractions.

253.    For example, the landing page for this device states that "you can generate thousands of supra-maximal contractions not achievable through ordinary exercise."

254.    The landing page for the EMSZERO Neo Sculpting Machine 2nd Gen Machine represents that the device causes muscle contractions.

255.    For example, the landing pages states that users will "[e]xperience deep involuntary muscle contractions."

256.    The landing page for the EMSzero Personal Body Sculpting Lite Machine represents that the device causes muscle contractions.

257.    For example, the landing page states that users will "[e]xperience up to 30,000 high-intensity muscle contractions that elevate muscle volume."

258.    The landing page for the EMSZERO Portable Neo Body Contouring Machine represents that the device causes muscle contractions.

259.    For example, the landing page states that users will "[a]chieve the equivalent of thousands of muscle contractions in just 30-minute sessions with EMSZERO."

260.    The landing page for the EMSZERO PowerFlex HI-EMT Muscle Stimulator represents that the device causes muscle contractions.

261.    For example, the landing page states that a key feature of the device is "[a]dvanced HI-EMT Technology: Boost your workout by stimulating autologous muscle expansion and contraction, resulting in deep muscle structure reshaping."

262.    The landing page for the EMSZERO Professional Body Sculpting Machine represents that the device causes muscle contractions.

263.    For example, the landing page states that "[t]his ems body sculpting machine utilizes a series of electronic pulses to contract and relax your muscles."

264.    The landing page for the EMSZERO UltraTone Muscle Conditioning Machine represents that the device causes muscle contractions.

265.    For example, the landing page states that the uses technology that "provides continuous muscle expansion and contraction."

266.    The landing page for the Gemstone Ice Cryo + EMSzero Body Sculpting Machine represents that the device causes muscle contractions.

267.    For example, the landing page states that the "EMSzero is a body contouring treatment that uses high intensity electromagnetic waves to penetrate up to 8cm of subcutaneous muscle tissue and induce supra-maximal muscle contractions."

268.    The landing page for the High-Intensity Muscle Stimulator represents that the device causes muscle contractions.

269.    For example, the landing pages states that the device "employs continuous expansion and contraction of the body's own muscles for extreme training."

270.    The landing page for the Home Use Neo Sculpting Machine represents that the device causes muscle contractions.

271.    For example, the landing page states that the device "employs advanced technology that induces super-intense magnetic wave stimulation, triggering thousands of forced muscle contractions per session."

272.    The landing page for the Personal Neo Sculpting Machine Pro represents that the device causes muscle contractions.

273.    For example, the landing page states that the device "employs continuous expansion and contraction of the body's own muscles for extreme training."

274.    The landing page for the Professional EMSzero Neo Body Sculpt Machine 5 in 1 represents that the device causes muscle contractions.

275.    For example, the landing pages states that the device "[a]chieve[s] the equivalent of a staggering 14,000 muscle exercise in a single 30-minute session." On information and belief, these "exercises" are muscle contractions.

276.   The landing page Professional EMSzero NEO Body Sculpting Machine 5 in 1 states this device and the Professional Sculpting Machine 5 in 1 "differ only in screen design while all other specifications remain the same."

277.   The instruction manual for the Professional Sculpting Machine 5 in 1 represents that the device causes muscle contractions.

278.   For example, the manual states that the device "[u]tiliz[es] High-Intensity Electromagnetic Waves (HI-EM) technology, this instrument continuously expands and contracts muscles."

279.   Defendant's infringement of the '634 patent has been, and continues to be, willful and malicious. On information and belief, Defendant has been aware of the '634 patent since before the filing of this complaint and have infringed the '634 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendant was aware of BTL's products for the reasons stated in paragraphs 24-30 and BTL marks its products with a reference to its online patent listing at www.btlnet.com/patents. Moreover, BTL informed Defendant of its patent infringement by letter on November 22, 2023.

280.   BTL will suffer irreparable harm unless Defendant is enjoined from infringing the '634 patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 11,679,255

281.   BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

282.   The '255 patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Claim 16 of the patent recites:

A device for treating a patient by radiofrequency energy and a pulsed electric current, the device comprising:

a flexible pad configured to be attached to a body part of a patient, the flexible pad comprising:

a flexible substrate comprising an underside configured to face the body part during a treatment;

an electrode coupled to the underside of the flexible substrate; and

an adhesive coupled to the underside of the flexible substrate and to the electrode,

wherein the electrode is configured to be in contact with the body part via the adhesive;

wherein the electrode is configured to apply radiofrequency energy to the body part to cause heating of the body part, and

wherein the electrode is configured to apply pulsed electric current to the body part to cause a muscle contraction of a muscle within the body part; and

a control unit configured to control the radiofrequency energy and the pulsed electric current to provide the heating and the muscle contraction of the body part during the treatment,

wherein the body part comprises one of a face, a neck, or a submentum.

283.    On information and belief, the Second Accused Devices are all configured to treat patients using radiofrequency energy and a pulsed electric current.

284.    The landing page for the EMSzero Facial Therapy Machine represents that the device uses radiofrequency and pulsed electric current.

285.    For example, the landing page states that the device "uses a powerful combination of high intensity facial electromagnetic stimulation and radio frequency."

286.    The landing page for the EMSzero Facial Therapy Machine Portable represents that the device uses radiofrequency and pulsed electric current.

287.    For example, the landing page states that the device uses "a combination of high-intensity facial electrical stimulation and radio frequency."

288.    The landing page for the Facial Therapy Master represents that the device uses radiofrequency and pulsed electric current.

289.    For example, the landing pages states that the device "uses a powerful combination of high intensity facial electromagnetic stimulation and radio frequency treatments."

290.    The landing page for the LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine represents that the device uses radiofrequency and pulsed electric current.

291.    For example, the landing pages states the the device "uses a powerful combination of high intensity facial electromagnetic stimulation and radio frequency treatments."

292.    The landing page for the Portable Facial Therapy Master represents that the device uses radiofrequency and pulsed electric current.

293.    For example, the landing page states that the device "uses a powerful combination of high intensity facial electromagnetic stimulation and radio frequency treatments."

294.    On information and belief, the Second Accused Devices all treat patients using flexible pads configured to attach to a patient's body part, that body part being the face, neck, or submentum, that contain a flexible substrate containing an electrode and adhesive that faces the body part.

295.    For example, the landing page for the EMSzero Facial Therapy Machine depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck, or submentum.

296.    On information and belief, a reasonable opportunity for further investigation or discovery will show that those flexible pads contain an electrode and adhesive.

297.    For example, the landing page for the EMSzero Facial Therapy Machine Portable depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

298.    On information and belief, a reasonable opportunity for further investigation or discovery will show that those flexible pads contain an electrode and adhesive.

299.    For example, the landing page for the Facial Therapy Master depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

300.    On information and belief, a reasonable opportunity for further investigation or discovery will show that those flexible pads contain an electrode and adhesive.

301.    For example, the landing page for the LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

302.    On information and belief, a reasonable opportunity for further investigation or discovery will show that those flexible pads contain an electrode and adhesive.

303.    For example, the landing page for the Portable Facial Therapy Master depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

304.    On information and belief, a reasonable opportunity for further investigation or discovery will show that those flexible pads contain an electrode and adhesive.

305.    On information and belief, the electrodes of all of the Second Accused Devices are configured to be in contact with the patient via the adhesive, produce radiofrequency energy to heat the body part, and apply pulsed electric current to cause muscle contractions in the body part.

306.    For example, the landing page for the EMSzero Facial Therapy Machine depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck, or submentum.

307.    For the reasons stated in paragraph 285, the EMSzero Facial Therapy Machine uses radiofrequency and pulsed electric current.

308.    For example, the landing page for the EMSzero Facial Therapy Machine Portable depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

309.    For the reasons stated in paragraph 287, the EMSzero Facial Therapy Machine Portable uses radiofrequency and pulsed electric current.

310.    For example, the landing page for the Facial Therapy Master depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

311.    For the reasons stated in paragraph 289, the Facial Therapy Master uses radiofrequency and pulsed electric current.

312.    For example, the landing page for the LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine depicts images of the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

313.    For the reasons stated in paragraph 291, the LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine uses radiofrequency and pulsed electric current.

314.    For example, the landing page for the Portable Facial Therapy Master depicts images of  the devices flexible pads on or configured to be placed on a patient's face, neck or submentum.

315.    For the reasons stated in paragraph 292, the Portable Facial Therapy Master uses radiofrequency and pulsed electric current.

316.    On information and belief, the Second Accused Devices all contain a control unit that controls the electrodes and their radiofrequency and electromagnetic properties.

317.    For example, each of the Second Accused Devices has a body that, on information and belief, contains the relevant control unit.

318.    For example, the landing page for the EMSzero Facial Therapy Machine depicts images of the machine's body and screen which, on information and belief, contain the device's control unit that controls the electrodes, their radiofrequency, and their electromagnetic properties.

319.    For example, the landing page for the EMSzero Facial Therapy Machine Portable depicts images of the machine's body and screen which, on information and belief, contain the device's control unit that controls the electrodes, their radiofrequency, and their electromagnetic properties.

320.    For example, the landing page for the Facial Therapy Master depicts images of the machine's body and screen which, on information and belief, contain the device's control unit that controls the electrodes, their radiofrequency, and their electromagnetic properties.

321.    For example, the landing page for the LMRF Face Rf Tightening Lift EMS Facial Electromagnetic Stimulation Machine depicts images of the machine's body and screen which, on information and belief, contain the device's control unit that controls the electrodes, their radiofrequency, and their electromagnetic properties.

322.    For example, the landing page for the Portable Facial Therapy Master depicts images of the machine's body and screen which, on information and belief, contain the device's control unit that controls the electrodes, their radiofrequency, and their electromagnetic properties.

323.    Defendant has induced infringement and continues to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 16 of the '255 patent by using, offering to sell, and selling the Second Accused Devices in the United States and by encouraging, promoting, and instructing customers to use the Second Accused Devices in manner that directly infringes the '255 patent.

324.    Defendant's infringement of the '255 patent has been, and continues to be, willful and malicious. On information and belief, Defendant has been aware of the '255 patent since before the filing of this complaint and has infringed the '255 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendant was aware of BTL's products for the reasons stated in paragraphs 24-30, and BTL marks its products with a reference to its online patent listing at www.btlnet.com/patents. Moreover, BTL informed Defendant of its patent infringement by letter on November 22, 2023.

## COUNT III: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

325.    BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

326.    By using "HIFEM," "EMSZERO," "EMSZERO NEO," "HI-EMT," "HIFESTM," "HIMET," and "HIMMT," Defendant is creating confusion among the consuming public as to the source, origin, sponsorship, and/or affiliation of the First Accused Devices and Second Accused Device with BTL.

327.    Defendant's conduct relating to the BTL Trademarks is without authorization.

328.    Defendant is thus in violation of 15 U.S.C. § 1114 regarding the BTL Trademarks and 15 U.S.C. § 1125(a) regarding the use of "HIFEM," "EMSZERO," "EMSZERO NEO," "HI-EMT," "HIFESTM," "HIMET," and "HIMMT," and/or other confusingly similar terms.

329.    Defendant's actions have cause BTL irreparable harm for which BTL is entitled to a permanent injunction under 15 U.S.C. § 1116.

330.    Such acts further cause harm to BTL including but not limited to BTL's reputation and goodwill, for which BTL is entitled to recover actual damages as well as the costs of any necessary corrective advertising.

331.    Because Defendant's conduct is willful, malicious, and exceptional, BTL is entitled to an accounting of profits, attorneys' fees, and multiplied damages.

## COUNT IV: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

332.    BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

333.    Defendant has no right to use the BTL Trademarks and/or other confusingly similar terms in connection with its goods, yet Defendant has traded off the goodwill associated with BTL and its products.

334.    Defendant has falsely held themselves out to customers and potential customers as being connected with BTL.

335.    Defendant has acted with intent to cause confusion or deceive the public as to the source and origin of its goods.

336.    Defendant's false designation of origin and false representations constitute unfair competition under 15 U.S.C. § 1125.

## COUNT V: VIOLATION OF THE DELAWARE DECEPTIVE TRADE PRACTICE ACT UNDER DEL. CODE ANN. TIT. 6, §§ 2531-2536

337.    BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

338.    Defendant's unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices constitutes a deceptive and unfair trade practice in violation of DTPA, Del. Code Ann. tit. 6, §§ 2531, 2536. Defendant's use of the BTL Trademarks as well as the confusingly similar marks in connection with the marketing and sale of the Accused Devices would deceive an objectively reasonable consumer as to the affiliation, connection, or association with BTL or the origin, sponsorship, or approval of Defendant's infringing Accused Devices by BTL. On information and belief, Defendant's deceptive actions have influenced and are likely to influence the consuming public's purchasing decisions. Defendant's unfair competition jeopardizes the goodwill created by the BTL Trademarks.

339.    BTL has sustained injury, damage, and loss in Delaware based on Defendant's use of the BTL Trademarks and the confusingly similar marks to promote, market, offer for sale, and sell the Accused Devices.

340.    Defendant's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL.

341.    Pursuant to Del. Code Ann. tit. 6, § 2533, BTL is entitled to recover damages in an amount to be proven at trial, plus reasonable attorneys' fees and costs.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

342.    BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

343.    Defendant has without authorization intentionally, willfully, and maliciously used the BTL Trademarks and/or confusingly similar variations of these trademarks to promote, market, offer for sale, and sell its products.

344.   By the acts described herein, Defendant has intentionally infringed the BTL Trademarks and engaged in unfair competition with respect to BTL in violation of the common law of the State of Delaware.

345.   Defendant's actions are likely to cause consumer confusion for the reasons stated in paragraphs 24-30.

346.   Defendant's actions have caused and will continue to cause BTL to sustain actual damages and lost profits in this District.

347.   BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendant is enjoined.

348.   Because of Defendant's unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and profits attributable to the unlawful conduct, which are presently indeterminate, and the costs of this action.

## COUNT VII: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

349.   BTL repeats and re-alleges paragraphs 1-39 as if fully set forth herein.

350.   Defendant has used marks identical to BTL's HIFEM® registered trademark.

351.   Defendant has used the identical marks in commerce in connection with the advertising and promotion of the Accused Devices.

352.   BTL has not authorized Defendant's use of the HIFEM® registered trademark to advertise and promote its Accused Devices.

353.   Defendant's unauthorized use of the HIFEM® trademark is likely to (a) cause the public and consumers to believe that Defendant's Accused Devices are authorized by and/or affiliated with BTL; and (b) result in Defendant unfairly benefitting from the reputation of BTL

and the HIFEM® trademark to the substantial and irreparable injury of consumers, BTL, and the HIFEM® trademark, and the substantial goodwill represented thereby.

354.    Defendant's acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflects Defendant's intent to exploit the goodwill and strong brand recognition associated with BTL's HIFEM® trademark.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendant as follows:

A.    A judgment that Defendant has infringed one or more claims of U.S. Patent Nos. 10,478,634 and 11,679,255 in violation of 35 U.S.C. § 271(a)-(c);

B.    An award of damages of at least $125,000 for infringement of the '634 patent and the '255 patent, with said damages to be trebled because of the intentional, willful, and malicious nature of Defendant's infringement, as provided by 35 U.S.C. § 284;

C.    A judgment that Defendant has willfully and maliciously infringed one or more claims of the '634 patent;

D.    A judgment that Defendant has willfully and maliciously infringed one or more claims of the '255 patent;

E.    A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

F.    An order permanently enjoining Defendant, its officers, directors, employees, agents, and all persons acting in concert with them, from infringing the '634 patent;

G.    An order permanently enjoining Defendant, its officers, directors, employees, agents, and all persons acting in concert with them, from infringing the '255 patent;

H.      A judgment that Defendant has violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

I.      A judgment that Defendant's use of the HIFEM mark, as alleged in this complaint, infringes BTL's HIFEM® trademark;

J.      A judgment that the EMSZERO mark is confusingly similar to BTL's EMSCULPT® trademarks and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademarks;

K.      A judgment that the EMSZERO NEO mark is confusingly similar to BTL's EMSCULPT NEO® trademarks and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT NEO® trademarks;

L.      A judgment that the HI-EMT mark is confusingly similar to BTL's HIFEM® trademark and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's HIFEM® trademark;

M.      A judgment that the HIFESTM mark is confusingly similar to BTL's HIFEM® trademark and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's HIFEM® trademark;

N.      A judgment that the HIMET mark is confusingly similar to BTL's HIFEM® trademark and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's HIFEM® trademark;

O.      A judgment that the HIMMT mark is confusingly similar to BTL's HIFEM® trademarks and that Defendant's use of that mark, as alleged in this complaint, infringes BTL's HIFEM® trademark;

P.     A judgment that Defendant has violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

Q.     An award of damages for Defendant's infringement of the BTL Trademarks, including Defendant's profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional, willful, and malicious nature of Defendant's infringement, as provided by 15 U.S.C. § 1117(b);

R.     Alternatively, an award of statutory damages for Defendant's infringement of BTL's HIFEM® trademark in an amount of $200,000, to be heightened to $2,000,000 for Defendant's willful use of a counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2);

S.     A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

T.     An award of damages against Defendant as a result of its wrongful acts against BTL in an amount to be proved at trial;

U.     An award of pre- and post-judgment interest of any monetary damages at the highest rate allowed by law;

V.     Permanent injunctive relief enjoining Defendant from:

  a.     Using the BTL Trademarks and/or any confusingly similar marks, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good that is not a genuine good offered by BTL, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

  b.     passing off, inducing, or enabling others to sell or pass of any good as a genuine BTL product, or any other good offered by BTL, that is not BTL's

or not offered under the authorization, control, or supervision of BTL and

approved by BTL for sale under the BTL Trademarks;

c.     committing any acts calculated to cause consumers to believe that

Defendant's goods are those sold under the authorization, control, or

supervision of BTL, or are sponsored by, approved by, or otherwise

connected with BTL; and

d.     further infringing the BTL Trademarks and damaging BTL's goodwill.

W.    An award of BTL's costs and expenses in this action;

X.     Shut down Defendant's website located at https://www.emszerobeauty.com/;

Y.     Freeze Defendant's bank account(s); and

Z.     For such other relief as the Court may deem just and proper.


Dated: July 24, 2024                              Respectfully submitted,

                                                  */s/ Richard C. Weinblatt*
                                                  Richard C. Weinblatt (#5080)
                                                  weinblatt@swdelaw.com
                                                  Stamoulis & Weinblatt LLC
                                                  800 N. West Street, Third Floor
                                                  Wilmington, DE 19801
                                                  Telephone: (302) 999-1540
                                                  Facsimile: (302) 762-1688

                                                  - and -

                                                  Seth R. Ogden (*pro hac vice* to be filed)
                                                  Patterson Intellectual Property Law, P.C.
                                                  Roundabout Plaza
                                                  1600 Division Street, Suite 500
                                                  Nashville, TN 37203
                                                  Telephone: (615) 242-2400
                                                  Facsimile: (615) 242-2221
                                                  sro@iplawgroup.com

                                                  *Attorneys for Plaintiff BTL Industries, Inc.*